THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RICHARD CHAD RANDALL,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF UTAH et al.,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 4:19-CV-38 DN<br><br>District Judge David Nuffer |

Plaintiff, Richard Chad Randall, is a *pro se* prisoner proceeding *in forma pauperis.* (ECF No. 2.) In his verified amended civil-rights complaint, 42 U.S.C.S. § 1983 (2022),[1] he requests damages, costs, and injunctive relief. (ECF No. 26.)

## I. BACKGROUND

Plaintiff names as defendants Utah Department of Corrections Lieutenant Lance Caldwell, Director Steve Gehrke, and Warden Shane Nelson. (*Id.*; 31, at 6 n.1.) His Amended Complaint, (ECF No. 26), contends Defendants violated his federal rights under the Due Process, Establishment, Free Exercise, and Free Speech Clauses, and the Religious Land Use and

---

[1] The federal civil-rights statute reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.S. § 1983 (2022).
    Section 1983 creates the right of action only; it does not create any substantive rights, which must derive from the Constitution or federal statute. *See Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002).

Institutionalized Persons Act (RLUIPA). *See* U.S. Const. amends. I, V; 42 U.S.C.S. §§ 2000cc-2000cc-5 (2022).[2] Specifically, he asserts that, because it contained "nudity," Defendants unconstitutionally denied him a book he ordered, entitled, *Tarot Compendium* (*TC*). (ECF No. 26, at 3.)

Asserting failure to state a claim upon which relief may be granted and qualified immunity, Defendants move for dismissal. (ECF No. 31, at 31-32 (setting forth qualified-immunity standards and plaintiff's burden).)[3] Plaintiff filed "Opposition to Defendants' Motion to Dismiss." (ECF No. 38.) And Defendants filed a "Reply in Support of Motion to Dismiss." (ECF No. 39.) The Court has conscientiously reviewed all these documents in preparing this Order.

## II. ANALYSIS

### A. Standard for Sufficiency of Complaint

When deciding if a complaint states a claim upon which relief may be granted, a court takes all well-pleaded factual statements as true and regards them in a light most favorable to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is fitting when, viewing those facts as true, a plaintiff has not posed a "plausible" right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519

---

[2] Plaintiff slips in a reference to *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978), which he possibly asserts supports a claim that Defendants actions "were based on affirmatively established policies," so "the government as an entity is responsible under § 1983." (ECF No. 26, at 8.) However, *Monell* pertains to municipal--not state--liability, so this possible attempt at a claim is not considered further. *See Monell*, 436 U.S. at 701.

[3] The Court disregards the attachments Defendants added to their Motion to Dismiss and references Plaintiff makes to other inmate's cases, and stays within the four corners of the Complaint and the qualified-immunity analysis. (ECF Nos. 31, 31-1, 31-2, 38, at 10.) The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

F.3d 1242, 1247-48 (10th Cir. 2008). Plaintiff has the burden "to frame a 'complaint with enough factual matter (taken as true) to suggest'" entitlement to relief. *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).

*Pro se* pleadings are construed "'liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). The Tenth Circuit holds that, if pleadings can reasonably be read "to state a valid claim on which the plaintiff could prevail, [they should be read] so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, the district court's proper function is not "to assume the role of advocate for the *pro se* litigant." *Id.* Dismissing the complaint "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

### B. Material Facts Assumed True

Plaintiff asserts Defendants breached his federal constitutional rights by denying him the book, *TC*. In his Amended Complaint, these are the specific facts alleged (viewed in a light most favorable to Plaintiff):

1. *TC* was "a religious instruction manual" that "connect[ed Plaintiff] to his gods." (ECF No. 26, at 4.)

2. The nudity shown in TC was "exposed . . . female breasts." (ECF No. 26, at 10.)

3. On September 12, 2018, Defendant Caldwell exercised authority "to order subordinate F. McNeill to . . . use an unconstitutional definition of nudity . . . as justification for non-delivery of" *TC* to Plaintiff. (ECF No. 26, at 7.) "Caldwell . . . answered [Plaintiff's] level one grievance. (ECF No. 38, at 21.)

4. On January 31, 2019, Defendant Nelson "answered Plaintiff's grievance," deciding not to overturn the earlier decision by another staff member to deny Plaintiff the *TC*. (ECF Nos. 26, at 7; 38, at 6, 21.)

5. On March 15, 2019, Defendant Gehrke issued a grievance response to uphold the earlier decision by another staff member "to deny delivery" of "Plaintiff's book *TC*." (ECF Nos. 26, at 7; 38, at 21.)

### C. Lack of Affirmative Link

The Court accepts as true Plaintiff's allegations that F. McNeill is the prison employee who denied him *TC* and Defendants Nelson and Gehrke acted only in the roles of denying grievances as to McNeill's denial of *TC*. (ECF No. 26, at 7.)

A § 1983 "plaintiff must show the defendant personally participated in the alleged violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). In other words, "[b]ecause vicarious liability is inapplicable . . . to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own action, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Though Plaintiff sues Defendants Nelson and Gehrke based on their supervisory positions, § "1983 does not authorize liability under a theory of *respondeat superior*." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *see also Pemberton v. Patton*, 673 F. App'x 860, 868 (10th Cir. 2016) (unpublished) ("[S]upervisory status alone is not enough to show personal participation.") (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). Plaintiff must have also alleged "more than 'a supervisor's mere knowledge of his subordinate's conduct.'" *See Schneider v. City of Grant Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 677). Indeed, to state a claim, Plaintiff was required to allege an affirmative link between each supervisor and any constitutional violation, requiring: "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (internal quotation marks omitted). Plaintiff has not made these required allegations.

He does allege both Nelson and Gehrke functioned to deny grievances as to McNeill's withholding of TC, but "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see, e.g., Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (determining warden's knowledge of alleged violation when he denied grievance was insufficient to show personal participation).

In its Order setting forth the Complaint's deficiencies and requiring Plaintiff to file an adequate Amended Complaint, the Court specifically notified Plaintiff that his Complaint (a) "inappropriately alleges civil-rights violations on basis of denied grievances"; and (b) "appears to inappropriately allege civil-rights violations on respondeat-superior theory (e.g., Defendants

Gehrke and Nelson)." (ECF Nos. 3, 19.) In that Order, the Court also notified Plaintiff that he "may not name an individual as a defendant based solely on his or her supervisory position." (ECF No. 19, at 5 (citing *Mitchell v. Maynard*, 80 F.2d 1433, 1441 (10th Cir. 1996)).) And the Order said, "Grievance denial alone with no connection to 'violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'" (*Id.* (quoting *Gallagher*, 587 F.3d at 1060).)

Despite all this, Plaintiff made the decision in his Amended Complaint to continue to name Defendants Gehrke and Nelson as defendants. (ECF No. 26.) He rationalizes ignoring the Court's guidance, saying, "Because low-rank staff are ordered to follow the policy interpretations of their superiors, they are not sued." (ECF No. 26, at 8.) But "low-rank staff" are exactly the defendants § 1983 has in mind for legal action; for instance, here, the potentially more liable defendant is the actual staff member who received *TC* in the mail then refused to pass it over to Plaintiff.

Plaintiff goes on to argue,

> In requesting relief for this injury, plaintiff followed the required chain of command, and each listed defendant is sued, not as a supervisor, but as an assigned link in that chain, whereby they each individually became a participant in depriving the plaintiff of his property, and are therefore responsible for any ensuing constitutional and statutory violations their actions created.

(*Id.* at 9.) And,

> By voluntarily seeking the positions of authority they hold, instead of choosing from other available positions, they signed up to make grievance decisions. Therefore, how can they pursue positions wielding decision-making power, then shirk the responsibility that came with that authority? If they did not want, or were not prepared to make decisions with constitutional repercussions, then they should not have put themselves in such

6

> positions of employment. . . . This is no casual connection, but an
> affirmative link to the constitutional violations alleged. And as
> defendants themselves points out--a denial of grievance does
> establish personal participation when it is connected to the
> violation of constitutional rights: *Stewart v. Beach*, 701 F.3d 1322
> (10th Cir. 2012). . . . By denying plaintiff of his property, they
> purported themselves as having sufficient authority, and are
> thereby personally responsible.

(ECF No. 38, at 27-28.)

What Plaintiff does not seem to understand is that his intent to hold grievance-denying

officials accountable at the level of an affirmative link, and his intense belief that grievance-

denying officials should be accountable at the level of an affirmative link, are not the governing

principles. Section 1983 simply does not allow him to validly allege a claim against individuals

on the basis that they have denied grievances. But this does not leave him without recourse,

because § 1983 affords him a cause of action against the individual who actually, actively

violated a constitutional right.

Adamantly pursuing four liability theories under the Federal Constitution and one

RLUIPA claim about this one book denial, Plaintiff appears to strongly believe that he somehow

necessarily has a remedy in federal court against whatever defendants he vehemently deems

liable; however, he

> as so many other pro se [litigants], misperceives the use and
> purpose of § 1983. Section 1983 does not exist to right every
> wrong -- it creates no enforceable rights. Section 1983 serves only
> to ensure an individual has a cause of action for violation of the
> Constitution and federal laws.

*Woolsey v. Dep't of Corrs.*, No. 91-1119, 1991 U.S. App. LEXIS 18184, at *3 (10th Cir. Aug. 1,

1991) (unpublished). This is why the Court cautioned Plaintiff to try to right his wrong by

bringing his § 1983 cause of action against a defendant with a valid alleged affirmative link.

7

Defendants Gehrke and Nelson are thus dismissed on all federal constitutional claims because Plaintiff failed--against them--to state a claim upon which relief may be granted, when Plaintiff did not allege facts affirmatively linking them to his claims.

### D. Qualified Immunity--Alternative Basis for Dismissal of Constitutional Claims

In their motion to dismiss, as to Plaintiff's claims for monetary relief based in the Federal Constitution, Defendants assert the defense of qualified immunity.

Qualified immunity means that an official must have fair notice of the law before being subject to suit for damages for violating it. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Two important interests are balanced by qualified immunity--"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Questions of qualified immunity should be resolved at the soonest feasible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). Plaintiffs confronting qualified-immunity challenges do not face a higher-than-normal pleading requirement. *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the qualified-immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Hence, to endure a Rule 12(b)(6) motion to dismiss, implicating a qualified-immunity defense, plaintiffs "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their

constitutional rights." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008).

To be clear, when the qualified-immunity defense is raised, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

The Court exercises its discretion to start and end with Plaintiff's failure to carry his burden of showing that his rights were "clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020).

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. "The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Accordingly, the Supreme Court has repeatedly admonished circuit courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Though "a case directly on point" is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019).
>
> "Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other [circuits] must have found the law to be as the

> plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted).
> . . . .
> . . . [W]e decline to consider district court opinions in evaluating the legal landscape for purposes of qualified immunity.

*Ullery*, 949 F.3d at 1291, 1300 (other citations omitted); *see also Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (stating burden "quite heavy" because "plaintiff must do more than simply allege the violation of a general legal precept [and] . . . must 'instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited'" (first ellipses in original) (quoting *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992) (quoting *Harlow*, 457 U.S. at 818))).

Plaintiff maintains that clearly established law--i.e., Supreme Court or Tenth Circuit decisions--support his right (under the Due Process, Establishment, Free Exercise, and Free Speech Clauses) to receive *TC*, with its depiction of naked female breasts. To determine whether Plaintiff has met his burden of showing that this right was "clearly established at the time of the defendant's conduct." *Ullery*, 949 F.3d at 1289, the Court scoured Plaintiff's Opposition to Defendants' Motion to Dismiss, (ECF No. 38), looking up and reviewing every one of the approximately thirty-four cases Plaintiff cited in his apparent attempt to show that his rights were "'sufficiently clear that every reasonable official would have understood that [withholding from Plaintiff the *TC* with its depiction of a naked female breast] violate[d] that right.'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle*, 566 U.S. at 664).

Out of those cases, the Court has identified the following six cases that are most relevant to Plaintiff's claims. Still, the Court's parenthetical summary of each case shows that none of

them is factually close enough to Plaintiff's case that Defendants "would have understood" from them that Defendants were, or could have been, violating Plaintiff's rights under the Federal Constitution.

1. *Thornburgh v. Abbott*, 490 U.S. 401, 403-04 (1989) (applying *Turner v. Safley*, 482 U.S. 78 (1987), "reasonableness standard" to determine prison rules, broadly allowing incoming publications but authorizing prison officials to reject publications found detrimental to institutional security, overcame "facial challenge" to their constitutionality under First Amendment but remanding for as-applied analysis for challenges to rejection of individual publications).

2. *Sperry v. Werholtz*, 413 F. App'x 31, 33-34 (10th Cir. 2011) (unpublished) (applying *Turner* in rejecting attack on constitutionality of prison policy prohibiting inmate possession of "any sexually explicit materials, including drawings, paintings, writing, pictures, items, and devices" if material has purpose of "sexual arousal or gratification" and "contains nudity," such as "female breast")

3. *Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1154-56 (10th Cir. 2007) (applying *Turner* in rejecting attack on constitutionality of jail policy prohibiting inmates from having publications with "any sort of sexually explicit material," which was construed by jail employees as "pictures of 'breasts and genitals'").

4. *Kay v. Bemis*, 500 F.3d 1214, 1218-20 (10th Cir. 2007) (reversing and remanding district court's denial of freedom-of-exercise claim as to prison's denial of plaintiff's request to have "tarot cards, incense, and religious books" so that district court could perform more comprehensive evaluation under *Turner*).

11

5. *Jacklovich v. Simmons*, 392 F.3d 420, 422, 426-27, 429, 431-33 (10th Cir. 2004) (reversing district court decision--that prison regulations requiring inmate publication purchases be made through inmate accounts, prohibiting gift publications, and limiting inmate publication purchases to thirty dollars per month--so district court could do more careful *Turner* analysis).

6. *Amatel v. Reno*, 156 F.3d 192, 194-95 (D.C. Cir. 1998) (applying *Turner* in rejecting attack on constitutionality of statute banning bureau of prisons' funds to distribute to inmates material that was sexually explicit or depicted nudity (e.g., exposed "female breast")).[4]

Not one of these cases says, explicitly or implicitly, that an inmate's rights under the Federal Constitution are violated when prison personnel keep the inmate from possessing publications containing nudity, whether the publication is religiously based or not. In fact, the three cases that involved materials that were sexually explicit or contained nudity all upheld the correctional facility's decision to deny those materials to inmates. *See Sperry*, 413 F. App'x at 33-34 (10th Cir. 2011); *Jones*, 503 F.3d at 1154-56; *Amatel*, 156 F.3d at 194-95. Moreover, neither of the two cases in which the plaintiff prevailed on appeal are particularly relevant here because they do not involve the denial of nude depictions; and, each was reversed only so a more thorough *Turner* analysis could be done at the district-court level, not because the prison decisions or regulations were determined to have violated constitutional rights. *See Kay*, 500 F.3d at 1218-20; *Jacklovich*, 392 F.3d at 422, 426-27, 429, 431-33.

---

[4] This case arguably does not help Plaintiff meet his burden because it is not a Supreme Court or Tenth Circuit case; and, because it is just one case from a different circuit, it does not "clearly establish[] weight of authority from other [circuits]." *See Toevs*, 685 F.3d at 916 (internal quotation marks omitted).

This is all to say that Plaintiff has not provided authority that leads the Court to find "the law to be as the plaintiff maintains." *Toevs*, 685 F.3d at 916. Plaintiff maintains that the law, as it was when Defendants denied him the *TC* book, required Defendants to give him possession of *TC*, with its depiction of naked female breasts. And he has the burden to provide the case citations to support his contention. But, as the above list shows, he has not carried that burden.

The qualified-immunity analysis "may appear unduly formalistic . . . . But this is the task required of [courts] under the qualified-immunity precedents [courts] are obligated to follow." *Ullery*, 949 F.3d at 1301.

Having thoroughly reviewed Plaintiff's opposition to Defendants' motion to dismiss, (ECF No. 38), the Court concludes that Plaintiff has not met his burden to show his "right was clearly established at the time of the defendant's conduct." *Ullery*, 949 F.3d at 1289. "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016). Plaintiff's federal constitutional damages claims against all three Defendants regarding his deprivation of the book *TC* are thus dismissed. This is an alternative basis to dismiss Defendants Gehrke and Nelson on these issues, and the first basis under which to dismiss Defendant Caldwell on these issues.

### E. RLUIPA

Plaintiff next seeks "prospective injunctive relief" against Defendants under RLUIPA. *See Reed v. Bryant*, 719 F. App'x 771, 777 (10th Cir. 2017) (unpublished). Plaintiff specifically asserts,

> In the act of using their office and authority to enforce non-
> delivery of 'Tarot Compendium,' a religious instruction manual

Plaintiff wished to use to engage in a religious exercise, motivated by sincerely-held beliefs, all 3 defendants have perpetuated a substantial burden on Plaintiff's religion that has been a long-standing custom at the UDOC. Defendants' participation in this customary deprivation of religious materials they deem 'obscene' and 'harmful' has retarded Plaintiff's spirituality for years and pressured him (through fear of deprivation) to refrain from religious exercise. Defendants' actions have forced an "Abrahamic" (e.g., Muslim, Christian, and/or Jewish) view of the human body onto plaintiff, in contradiction to his Wiccan (Pagan) beliefs. Defendants did this without any compelling government interest, and purposefully rejected (by deceptive means in Defendant Gehrke's case) the application of requested, appropriate, and available least-restrictive means of burdening his religion . . . .

(ECF No. 26, at 5, 12-13.)

"RLUIPA . . . is limited to official-capacity claims for equitable relief." *Khan v. Barela*, 808 F. App'x 602, 605 (10th Cir. 2020) (unpublished) (citing *Sossamon v. Texas*, 563 U.S. 277, 280 (2011) (holding Eleventh Amendment immunity bars RLUIPA claims for money damages); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (holding "there is no cause of action under RLUIPA for individual-capacity claims")). "Such a claim may be brought against individual prison officials in their official capacities" only. *Reed*, 719 F. App'x at 777.

"To survive a motion to dismiss, . . . [Plaintiff] was required to allege only that his request [for *TC*] was motivated by a sincerely held religious belief and that his exercise of that belief has been substantially burdened by the government." *Williams v. Wilkinson*, 645 F. App'x 692, 699 (10th Cir. 2016) (unpublished) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010)). "This inquiry is specific to [Plaintiff's] subjective beliefs." *Id.* "'Under [RLUIPA], it isn't for judges to decide whether a claimant who seeks to pursue a particular religious exercise has correctly perceived the commands of [his] faith or to become arbiters of scriptural interpretation.'" *Id.* at 700 (quoting *Yellowbear v. Lampert*, 741 F.3d 48, 54-55 (10th

14

Cir. 2014) (citation and quotation marks omitted; alteration in original). "Nor may the courts decide at the pleading stage that tenets of the subject religion can be satisfied by alternative methods." *Id.* "As the litigation progresses, [Defendants] may satisfy RLUIPA by establishing that denying the prisoner's request for an accommodation is the least restrictive means of achieving a compelling government interest." *Id.* But at this motion-to-dismiss step, Plaintiff has done all he needed to do: "allege . . . a substantial burden on the exercise of a sincerely-held religious belief." *Id.* The complaint is far from clear but when there is a struggle "to ascertain the exact parameters of [a] *pro se* complaint," the *pro se* prisoner, "[a]s both the summary judgment non-movant and a *pro se* litigant . . . deserves the benefit of the doubt." *Id.* at 701 (quoting *Abdulhaseeb*, 600 F.3d at 1325-25 (Gorsuch, J., concurring)).

Because Plaintiff has met his "burden of [alleging] that [possession of TC] is a religious exercise, and the Defendants have substantially burdened that exercise," the burden "shifts to the government to show that the government action is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest." *See Schlobohm v. Ash*, No. 23-3014-JWL, 2023 U.S. Dist. LEXIS 10583, at *19 (D. Kan. Jan. 20, 2023).

Defendants' Motion to Dismiss Plaintiff's RLUIPA claim is thus denied.

### III. ORDER

Accordingly, **IT IS ORDERED** that:

**(1)** All federal constitutional claims against Defendants Gehrke and Nelson are **DISMISSED**, based on Plaintiff's failure to affirmatively link them to any claims.

**(2)** All federal constitutional claims, for monetary damages, against all defendants are **DISMISSED**, based on Defendants' affirmative defense of qualified immunity. This is an

alternative basis for dismissal as to Defendants Gehrke and Nelson and a primary basis for dismissal as to Defendant Caldwell.

(3) Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. (ECF No. 31.)

(A) The motion to dismiss to is granted as to all federal constitutional claims against Defendants Gehrke and Nelson; and as to all federal constitutional claims for damages against all defendants.

(B) The motion to dismiss is denied as to RLUIPA claims for prospective relief as to Defendants in their official capacities.

(4) Plaintiff's request for "preliminary injunctive relief from defendants involuntarily moving Plaintiff out of incentivized housing to a less privileged location as retaliation for filing suit, or as a strategy to moot Plaintiff's claim" is **DENIED**. (ECF No. 26, at 15.) There is no claim regarding retaliation or housing classification here, so this request is inappropriate.

(5) As to the RLUIPA claim, Defendants must move beyond their motion to dismiss to the next stage of litigation, though nothing in this Order is intended to tell Defendants what theories to proceed under. Defendants remain welcome to raise any basis for dismissal that they deem suitable.

(6) Defendants must file a *Martinez* report[5] and dispositive motion as follows:

---

[5] *See Martinez v. Aaron,* 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987),  the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by

**(A)** If Defendants wish to assert the affirmative defense of Plaintiff's failure to exhaust administrative remedies in a grievance process,

**(i)** Defendants must within 90 days, prepare and file a *Martinez* report limited to the exhaustion issue; and,

**(ii)** within 120 days, file a separate summary-judgment motion, with a supporting memorandum.

**(B)** If Defendants choose not to rely on the defense of failure to exhaust and wish to pierce the allegations of the Complaint, Defendants must,

**(i)** within 90 days, prepare and file a *Martinez* report addressing the substance of the complaint; and,

**(ii)** within 120 days, file a separate summary-judgment motion, with a supporting memorandum.

**(C)** If Defendants wish to seek relief otherwise contemplated under the procedural rules (e.g., requesting an evidentiary hearing), Defendants must file an appropriate motion within 90 days of filing their answer.

**(7)** Within 30 days of its filing, Plaintiff must respond to the *Martinez* report. Plaintiff should keep in mind that *Martinez* reports may "be used for their truth against a plaintiff if the

---

affidavits and copies of internal disciplinary rules and reports.  The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims.  This, of course, will allow the court to dig beneath the conclusional allegations.  These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

plaintiff has been warned that failing to respond to the *Martinez* report could lead to that result."
*Ortiz v. Torgensen*, 857 F. App'x 419, 426-27 (10th Cir. 2021) (unpublished).

**(8)** Within 30 days of its filing, Plaintiff must respond to the summary-judgment motion.
For Plaintiff's information and convenience, the Court has attached the procedural rules
governing summary-judgment practice.

**(9)** Plaintiff is notified that, when Defendants move for summary judgment, Plaintiff may
not rest upon the mere allegations in the Amended Complaint. Instead, as required by Federal
Rule of Civil Procedure 56(e), to survive a motion for summary judgment Plaintiff must allege
specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

**(10)** Defendant shall file a reply brief within 30 days after the date Plaintiff's opposition
is filed.

**(11)** A motion to dismiss or for summary judgment shall be deemed submitted as of the
date the reply brief is due. No hearing will be held on a motion unless the Court so orders at a
later date.

DATED this 31st day of March, 2023.

BY THE COURT:

JUDGE DAVID NUFFER
United States District Court

18

# Fed Rule of Civil Procedure 56

## Rule 56. Summary Judgment

- **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
- **(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.
- **(c) Procedures.**
  - **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    - **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
    - **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
  - **(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
  - **(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
  - **(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.
- **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
  - **(1)** defer considering the motion or deny it;
  - **(2)** allow time to obtain affidavits or declarations or to take discovery; or
  - **(3)** issue any other appropriate order.
- **(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
  - **(1)** give an opportunity to properly support or address the fact;
  - **(2)** consider the fact undisputed for purposes of the motion;
  - **(3)** grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
  - **(4)** issue any other appropriate order.
- **(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:
  - **(1)** grant summary judgment for a nonmovant;
  - **(2)** grant the motion on grounds not raised by a party; or
  - **(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.
- **(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.
- **(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**DISTRICT OF UTAH LOCAL CIVIL RULE 56-1**

*SUMMARY JUDGMENT: MOTIONS AND SUPPORTING MEMORANDA*

**(a) <u>Summary Judgment Motions and Memoranda.</u>**
A motion for summary judgment and the supporting memorandum must clearly identify itself in the case caption and introduction.
**(b) <u>Motion; Requirements and Supporting Evidence.</u>**
A motion for summary judgment must include the following sections and be supported by an Appendix of Evidence as follows:
(1) <u>Introduction and Relief Sought:</u>A concise statement of each claim or defense for which summary judgment is sought, along with a clear statement of the relief requested. The parties should endeavor to address all summary judgment issues in a single motion. If a party files more than one motion, the court may strike the motion and that require the motions be consolidated into a single motion.
(2) <u>Background (Optional):</u>Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Relief Sought section and the Statement of Undisputed Material Facts section. Factual summaries in the background section need not be limited to undisputed facts and need not cite to evidentiary support.
(3) <u>Statement of Undisputed Material Facts:</u> A concise statement of the undisputed material facts that entitle the moving party to judgment as a matter of law. Only those facts necessary to decide the motion should be included in this section. The moving party must cite with particularity the evidence in the Appendix of Evidence that supports each factual assertion.
(4) <u>Argument:</u> An explanation for each claim or defense, of why, under the applicable legal principles, the moving party is entitled to judgment as a matter of law. The arguments should include a statement of each claim or defense on which the party is seeking summary judgment and supporting authorities. Any factual citations must cite to the Appendix of Evidence, not the Statement of Undisputed Material Facts.
(5) <u>Appendix of Evidence:</u> All evidence offered in support of the motion must be submitted in an attached appendix. The appendix should be proceded by a captioned cover-page index that lists each exhibit by number, includes a description or title, and if the exhibit is a document, identifies the source of the document. The appendix should include complete copies of all exhibits, including complete copies of depositions, to the extent possible. In cases where lengthy depositions are relied upon, the moving party need not submit the entire deposition. However, the moving party must submit at least four (4) pages before and four (4) pages after the cited depostition transcript pages(s), for a total of at least nine (9).
**(c) <u>Opposition Memorandum Requirements and Supporting Evidence.</u>**
A memorandum in opposition to a motion for summary judgment must include the following sections and, if applicable, be supported by an Appendix of Evidence as follows:
(1) <u>Introduction:</u> A concise summary explaining why summary judgment should be denied.
(2) <u>Background (Optional):</u> Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Introduction section and the Response to Statement of Undisputed Material Facts section. Factual summaries in the background
section need not be limited to undisputed facts and need not cite to evidentiary support.
(3) <u>Response to Statement of Undisputed Material Facts:</u> A restatement of each fact the opposing party contends is genuinely disputed or immaterial, a concise statement explaining

why the fact is disputed or immaterial, and a citation with particularity to the evidence upon which the non-moving party relies to refute that fact **8**. Any factual citations must reference the appropriate party's Appendix of Evidence, rather than either party's factual statements or responses. The nonmoving party should not restate all of the moving party's statement of facts and should only respond to those facts for which there is a genuine dispute of material fact.

(4) <u>Statement of Additional Material Facts (if applicable):</u> If additional material facts are relevant to show that there is a genuine dispute of material fact, state each such fact and cite with particularity the evidence that supports the factual assertion from the appropriate party's Appendix of Evidence.

(5) <u>Argument:</u> An explanation for each claim or defense of why, under the applicable legal principles, summary judgment should be denied. Any factual citations must cite to the appropriate party's Appendix of Evidence, rather than either party's factual statements or responses.

(6) <u>Appendix of Evidence:</u> All evidence offered in opposition to the motion must be submitted in an appendix, utilizing the same procedure set out in DUCivR 56-1(b)(5). Counsel must make every effort not to duplicate evidence submitted by the other party. The appendix should be preceded by a cover page index that lists each exhibit by number, includes a description or title and, if the exhibit is a document, identifies the source of the document.

**(d) Reply**.

The moving party may file a reply memorandum. In the reply, a moving party may cite only additional evidence not previously cited in the opening memorandum to rebut a claim that a material fact is in dispute. Otherwise, no additional evidence may be cited in the reply memorandum, and if cited, the court will disregard it.

**(e) Citations of Supplemental Authority.**

When pertinent and significant authorities come to the attention of a party after the party's memorandum in support of or in opposition to a summary judgment motion has been filed, or after oral argument but before decision, a party may promptly file a notice with the court and serve a copy on all counsel, setting forth the citations. There must be a reference either to the page of the memorandum or to a point argued orally to which the citations pertain, but the notice must state, without argument, the reasons for the supplemental citations. Any response must be made, filed promptly, and be similarly limited.

**(f) Failure to Respond.**

Failure to respond timely to a motion for summary judgment may result in the court's granting the motion without further notice, provided the moving party has established that it is entitled to judgment as a matter of law.

**(g) Length of Memoranda and Filing Times.**

(1) A motion for summary judgment and a memorandum in opposition must not exceed 10,000 words, or in the alternative, forty (40) pages. A reply brief cannot exceed 5,000 words, or in the alternative, twenty (20) pages. If the document exceeds the page limit, then the party must certify compliance with the word-count limit. This limitation includes the following items: introduction, relief sought, background, statement of undisputed material facts, response to statement of undisputed material facts, statement of additional material facts, argument, and conclusion. This limitation excludes the following items: face sheet, table of contents, table of authorities, signature block, certificate of service, and appendix. Motions to file an overlength brief are discouraged and will be granted only upon a showing of good cause and exceptional circumstances, as set forth in DUCivR 7-1(e). Â

(2) Filing times and length of memoranda are governed by DUCivR 7-1.